SHACKELFORD v. CITY OF WILMINGTON

[127 N.C. App. 449 (1997)]

---

RONALD E. SHACKELFORD, ET. AL., PETITIONERS v. CITY OF WILMINGTON, RESPONDENT

No. COA96-1064

(Filed 7 October 1997)

1. **Municipal Corporations § 58 (NCI4th)— annexation— development for urban purposes—classification of tracts— subdivision test**

    The trial court did not err when reviewing an annexation ordinance by upholding the City's classification of certain tracts as commercial or institutional under the subdivision test for determining whether a tract is sufficiently developed for urban purposes so as to qualify for annexation. The court's findings show that approximately twenty-five percent of each tract was directly and actively being used for commercial or institutional

SHACKELFORD v. CITY OF WILMINGTON

[127 N.C. App. 449 (1997)]

purposes and petitioners failed to show that the usage was insignificant as compared to the noncommercial or noninstitutional use applicable to the remainder of the tracts.

2. **Municipal Corporations § 58 (NCI4th)— annexation— development for urban purposes—classification of tracts— Airlie Gardens**

The trial court did not err when reviewing an annexation ordinance by upholding the City's classification of the Airlie Gardens tract as sufficiently developed for urban purposes to qualify for annexation. There is ample evidence of significant use of the entire tract as commercial property; petitioner's contention that this use is only incident to the Corbett family's private use of the tract is not persuasive.

3. **Municipal Corporations § 58 (NCI4th)— annexation— development for urban purposes—classification of tracts— golf course and supporting acreage**

The trial court did not err in a disputed annexation by upholding the City's classification of a certain tract as commercial where the tract contained a golf course, driving range, and related improvements, with additional acreage for a lake used to irrigate the golf course, a creek headwaters, and a buffer area. Significant portions of the acreage surrounding the area containing the golf course, driving range and related improvements were actively being used for drainage and irrigation of that area and thus were essential to support the commercial use.

4. **Municipal Corporations § 58 (NCI4th)— annexation— development for urban purposes—classification of tracts— property in active development**

The trial court properly found in a disputed annexation that a tract was subdivided into lots and tracts five acres or less at the time of annexation where the property was in active development. Moreover, the City's method of estimating the degree of subdivision based on county tax maps, aerial photographs, actual surveys, and other means was reasonably reliable under the circumstances.

Appeal by petitioners from order and judgment entered 10 April 1996 by Judge Narley L. Cashwell in New Hanover County Superior Court. Heard in the Court of Appeals 12 May 1997.

**SHACKELFORD v. CITY OF WILMINGTON**

[127 N.C. App. 449 (1997)]

*Shipman & Associates, L.L.P., by Gary K. Shipman and C. Wes Hodges, II, for petitioners.*

*Thomas C. Pollard for respondent.*

McGEE, Judge.

In this appeal, petitioners challenge the City of Wilmington's proposed annexation of certain property on the ground that the property was not sufficiently developed for urban purposes pursuant to N.C. Gen. Stat. § 160A-48(c)(3).

In September 1995, the City adopted a resolution approving a proposed annexation service plan (the Plan) including property owned by petitioners. The Plan was discussed at a public hearing in October 1995. In November 1995, the City amended the plan and enacted an annexation ordinance. Petitioners filed this action seeking judicial review of the annexation ordinance in superior court. The trial court subsequently allowed petitioners to file an amended petition and the City answered. The matter was heard during the 13 February 1996 special session of New Hanover County Superior Court, Judge Narley L. Cashwell presiding. On 10 April 1996, the trial court affirmed the annexation ordinance and denied petitioners' prayers for relief. Petitioners appeal.

Petitioners contend various tracts to be annexed are not sufficiently developed for urban purposes so as to qualify for annexation under G.S. § 160A-48(c)(3). G.S. § 160A-48(c)(3) provides, in pertinent part:

(c) Part of all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

* * *

(3) It is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are *used* for residential, commercial, industrial, institutional or governmental purposes, and is *subdivided* into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

G.S. § 160A-48(c)(3) (1994) (emphasis added). Pursuant to this statute, to qualify for annexation, an area must satisfy both

> (1) *the use test*—that not less than 60 percent of the lots and tracts in the area must be in actual use, other than for agriculture, and (2) *the subdivision test*—not less than 60 percent of the acreage which is in residential use, if any, and is vacant must consist of lots and tracts of five acres or less in size.

*Lithium Corp. v. Bessemer City*, 261 N.C. 532, 538, 135 S.E.2d 574, 579 (1964). Some actual, minimum urbanization of a proposed annexation area is required for annexation. *Thrash v. City of Asheville*, 327 N.C. 251, 257, 393 S.E.2d 842, 846 (1990). In addition, N.C. Gen. Stat. § 160A-54 (1994) requires a municipality to "use methods calculated to provide reasonably accurate results" when determining the degree of subdivision under G.S. § 160A-48. *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980). In an appeal from the adoption of an annexation ordinance, "[w]here . . . the proceedings show prima facie that there has been substantial compliance with the statute, the burden is on the petitioners challenging the ordinance to show competent evidence that the City in fact failed to meet the statutory requirements." *Asheville Industries, Inc. v. City of Asheville*, 112 N.C. App. 713, 719, 436 S.E.2d 873, 876 (1993).

Petitioners specifically challenge the City's compliance with the subdivision test. First, they contend respondent incorrectly classified four tracts—the T.F. Holdings tract, the Division of Motor Vehicles (DMV) tract, the Airlie Gardens tract and the Duck Haven tract—as commercial or institutional/governmental and that these tracts should have been included in the total acreage calculation for determining compliance with the subdivision test. An area is improperly classified as to use if there is no evidence that the land is being used either directly or indirectly for the classified use. *See R.R. v. Hook*, 261 N.C. 517, 520, 135 S.E.2d 562, 565 (1964). "Where there has been no showing that the extent of industrial use was insignificant as compared to nonindustrial use, petitioner has failed to carry his burden to demonstrate a misclassification." *Asheville Industries, Inc.*, 112 N.C. App. at 720-21, 436 S.E.2d at 877; *see also Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 20, 293 S.E.2d 240, 244 (stating "[t]here has been no showing [by petitioner] that the extent of industrial use was insignificant as compared to any nonindustrial use"), *disc. review denied*, 306 N.C. 559, 294 S.E.2d 371 (1982). Thus, here petitioners had the burden to show that the extent of the use assigned to

each challenged tract by respondent was insignificant as compared to uses other than the assigned use. We address petitioners' contentions on this issue as to each tract.

### T.F. Holdings tract

[1] Petitioners contend the court erred in upholding the City's classification of the entire T.F. Holdings tract as commercial. They assert this tract should either have been split into a commercial area and a vacant area or classified in its entirety as vacant. We disagree. In support of its finding that the entire tract was being used for commercial purposes at the time of annexation, the trial court found the total tract was 13.76 acres of which 3.56 acres were occupied by a used car lot, repair shop and building and that the remaining 10.2 acres were wooded. The court further found that Webster Trask, a principal in T.F. Holdings, testified that the used car lot, repair shop and building were orally leased to persons but that the leases did not include the right to used the remaining portions of the tract. These findings show that approximately twenty-five percent of the tract was directly and actively being used for commercial purposes.

Petitioners assert this case is similar to *R.R. v. Hook* in which our Supreme Court held a 13.747 acre tract was improperly classified as industrial when one-tenth of the tract was used for parking while the remainder was vacant, unused land. *See Hook*, 261 N.C. at 520, 135 S.E.2d at 565. However, we find the twenty-five percent commercial use of the T.F. Holdings tract was much more substantial than the ten percent use at issue in *Hook*. We hold petitioners have failed to show that twenty-five percent usage of this tract was insignificant as compared to the noncommercial use applicable to the remainder of the tract and that the trial court did not err by upholding the City's classification of this entire tract as commercial.

### DMV tract

Petitioners contend the trial court erred in upholding the City's classification of the entire DMV tract as institutional. We disagree. The trial court found the total tract was 15.8 acres of which 3.9 acres were occupied by a building and parking lot used by DMV and the Highway Patrol and that the tract was being used for institutional or governmental purposes at the time of annexation. The court also found there is a radio tower on the south edge of the parking lot and that the guide wires for this tower extend into the wooded area. As with the T.F. Holdings tract, approximately twenty-five percent of this

tract was directly and actively being used for institutional purposes. In addition, as to this tract, some of the wooded land was being used for the radio tower guide wires. We hold petitioners have failed to show this institutional use was insignificant as compared to the use of the remaining portion of the tract and that the trial court did not err by finding this tract was used for institutional or governmental purposes.

### Airlie Gardens tract

[2] Petitioners contend the trial court erred by upholding the City's classification of the Airlie Gardens tract as commercial. We disagree. The trial court found the total tract was 73.5 acres consisting of gardens, ponds, wooded areas and open lawns with driveways winding throughout these areas and was owned by the Corbett Packaging Company. The court found that over the years the gardens have been open to the public upon payment of an admission fee for various lengths of time ranging from one and one-half months up to seven months of the year. The court found certain flowering plants are planted in the wooded area and that an irrigation system is located in the wooded area. The court found that Airlie Gardens distributed advertisements and brochures soliciting public visitation of the gardens and that the gardens are also available for weddings and receptions and have been used for film making. In addition, testimony at trial indicated that two parking areas on the tract were available for public use.

We find ample evidence of significant use of the entire Airlie Gardens tract as commercial property. We are not persuaded by petitioners' contention that this commercial use is only incidental to the Corbett family's private use of the tract. Such a concurrent use does not require reclassification of the property. *See Scovill Mfg. Co.*, 58 N.C. App. at 19, 293 S.E.2d at 244. We hold the trial court's findings upholding the City's classification of this tract as commercial are amply supported by the record evidence and these findings in turn support the court's legal conclusions.

### Duck Haven tract

[3] Petitioners also contend the court erred in upholding the City's classification of the Duck Haven tract as commercial. They contend 125.51 acres of this tract should have been classified as vacant. We disagree. Respondent classified 243.21 acres of the Duck Haven tract as commercial and the trial court upheld this classification. A 2.79 acre portion, which is separated from the rest of the tract by a road,

was classified by the City as vacant. The trial court found that 115.7 acres of the 243.21 acres classified as commercial were used as a golf course, driving range, and related improvements. The court also found that the tract contained a lake, that the headwaters of Bradley Creek were located on a corner of the property, and that a drainage ditch extended from the golf course to Bradley Creek. The court found the lake was used to irrigate the golf course and that the lake, the creek headwaters area and buffer areas for the golf course and driving range covered acreage in addition to the 115.7 acres actually occupied by the golf course, driving range and improvements. The court found the remainder of the tract was wooded and that two acres of the tract housed a private residence.

These findings support the trial court's decision to uphold the City's classification of 243.21 acres of this tract as commercial. Our Supreme Court has upheld a classification of parcels contiguous to industrial parcels as industrial when the evidence showed the contiguous parcels were being actively used to support the industrial use of the industrial parcels and were essential to this use. *Food Town Stores*, 300 N.C. at 28-29, 265 S.E.2d at 128. The supporting uses on these parcels included erosion control improvements. *Id.* at 28, 265 S.E.2d at 128. Similarly here, significant portions of the acreage surrounding the 115.7 acre area containing the golf course, driving range and related improvements were actively being used for drainage and irrigation of the 115.7 acre area and thus were essential to support the commercial use on the 115.7 acre area. We hold the trial court did not err by upholding the City's classification of 243.21 acres of the Duck Haven tract as commercial.

As to all of these tracts, petitioners also assert error in the City's method of classifying an entire tract as commercial, industrial, governmental or institutional if any portion of the tract was used for such a purpose without evaluating the significance of this use to the overall tract. Since we have held that the uses at issue on these tracts were significant in relation to the tracts as a whole, we need not decide whether the City's use of this method, in general, was improper as the classifications made are supported by the evidence presented and comport with the requirements of G.S. § 160A-48(c)(3).

## Landfall Property

[4] Petitioners next contend that nine areas within the Pembroke Jones Park at the Landfall Development (Landfall property) were

improperly categorized by the City and by the trial court as subdivided into tracts five acres or less in size under the subdivision test in G.S. § 160A-48(c)(3). We disagree. Petitioners contend that in order for land to be considered subdivided for annexation purposes it must be subdivided into lots that "are located on streets laid out and open for travel and [that] have been sold or offered for sale as lots" pursuant to N.C. Gen. Stat. § 105-287(d) (1995). This tax statute has been applied by our appellate courts as a factor in assessing the degree of subdivision for annexation purposes. *See Thrash*, 327 N.C. at 255, 258, 393 S.E.2d at 845, 847; *Asheville Industries, Inc.*, 112 N.C. App. at 720, 436 S.E.2d at 877. However, in applying the subdivision test, the central inquiry is the degree of actual urbanization of the proposed area. *See Thrash*, 327 N.C. at 256-57, 393 S.E.2d at 846; *Asheville Industries, Inc.*, 112 N.C. App. at 719-20, 436 S.E.2d at 877. Other primary considerations are whether the methods used by the City for assessing the degree of subdivision are "reasonably reliable," *see* G.S. § 160A-54(3), and whether the record evidence used by the City reflects the actual condition of the property. *See Thrash*, 327 N.C. at 256-58, 393 S.E.2d at 845-47.

Here, the court's findings and record evidence showed the Landfall property was in active development. The trial court found the Landfall property consisted of nine vacant areas totaling approximately 154 acres. The court found these areas were being developed by Landfall Associates, the owners of most of the property in these areas. The court found final subdivision plats had been recorded in the New Hanover County registry in accordance with the county's subdivision regulations at the time the annexation plan was adopted and that these plats show the entire area as being subdivided into lots and tracts five acres or less in size. The court found all of the recorded plats indicate they are based on actual surveys of the property. One street, Arboretum Drive, was paved and open to travel. Other streets in the subdivision were not open for travel although some of these were dirt roads. The court also found, at the time of the public hearing on the annexation, that Landfall Associates had sold twelve lots in two areas of the development by reference to subdivision plats. The trial court made other extensive findings all tending to show the Landfall property was actively being developed as a subdivision at the time of the public hearing. The actual state of the Landfall property contrasts sharply with the lack of active development of the properties at issue in *Thrash* and *Asheville Industries*. In addition, we find the City's method of estimating the degree of subdivision based on county tax maps, aerial photographs, actual surveys,

## CHICAGO TITLE INS. CO. v. WETHERINGTON

[127 N.C. App. 457 (1997)]

and other means was reasonably reliable under the circumstances. We hold the record evidence supports the trial court's finding that the Landfall property was subdivided into lots and tracts five acres or less in size at the time of annexation.

Given our disposition of these contentions, we find it unnecessary to address petitioners' remaining contentions or the City's cross-assignment of error.

Affirmed.

Judges EAGLES and SMITH concur.