AMERICAN GREETINGS CORPORATION, J.O. TOMS AND WIFE, EUNICE H. TOMS, J. DONALD TOMS, FREDERIC E. TOMS, AND RANDY C. TOMS, PETITIONERS V. THE TOWN OF ALEXANDER MILLS, A NORTH CAROLINA MUNICIPAL CORPORATION, RESPONDENT

No. COA97-617

(Filed 3 March 1998)

**Municipal Corporations § 58 (NCI4th)— annexation—tract insufficiently urbanized**

 The trial court erred by affirming an annexation ordinance where petitioners met their burden of showing by competent evidence that the Town failed to comply with the subdivision test requirement under N.C.G.S. § 160A-36(c). The 4.29 acre tract (one of two tracts sought to be annexed) was not sufficiently urbanized to satisfy statutory requirements; furthermore, there is an insufficient need to justify a need for annexation under the *Report of the Municipal Government Study Commission* (which the General Assembly considered before enacting Chapter 160A) in that the 33.53 acre farm of which the 4.29 acres is a part contains two occupied houses surrounded by acres of fields.

 Appeal by petitioners from judgment entered 19 December 1996 by Judge Zoro J. Guice, Jr. in Rutherford County Superior Court. Heard in the Court of Appeals 13 January 1998.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Albert L. Sneed, Jr. and Craig D. Justus, for petitioners-appellants.*

*Herbert L. Hyde; and Arledge, Oglesby, Williams, Martelle, L.L.P., by Richard P. Williams and Robert K. Martelle, for respondent-appellee.*

WALKER, Judge.

The petitioners in this action both own property adjacent to the respondent Town of Alexander Mills (the Town). American Greetings, Inc. (AGI) is the owner of a 26.31 acre tract of land on which it operates an industrial manufacturing facility. J. Donald Toms, Frederic E. Toms and Randy C. Toms are the owners of a 33.53 acre farm (the Toms farm) which they acquired in 1986 from their parents, J.O. Toms and Eunice H. Toms, with the parents reserving a life estate for themselves. Since the conveyance, two residences have been maintained on the property, the main residence in which the parents reside and a tenant house which was rented to a family of eight for a number of years.

The Town is a municipal corporation in Rutherford County, North Carolina with a population of less than 5,000 persons. As such, its actions are governed by Chapter 160A, Article 4A, Part 2 of the North Carolina General Statutes. *See* N.C. Gen. Stat. §§ 160A-33 *et seq.* (1994).

On 10 July 1995, the Town adopted a Resolution of Intent to Annex pursuant to N.C. Gen. Stat. § 160A-37 (1994). The property it sought to annex included a total of 30.6 acres, consisting of the entire 26.31 acre AGI tract and 4.29 acres from the Toms farm.

The Town then filed a report of plans for the extension of city services to the proposed annexation area pursuant to N.C. Gen. Stat. § 160A-35 (1994) which complied with the statutory requirements on its face. Following a public hearing on the proposed annexation, the Town's Board of Alderman enacted the ordinance on 11 September 1995. The petitioners appealed to the superior court pursuant to N.C. Gen. Stat. § 160A-38(a) (Cum. Supp. 1997) for judicial review of the ordinance. After a non-jury trial, the superior court entered an order upholding the Town's annexation ordinance. The petitioners then appealed to this Court pursuant to N.C. Gen. Stat. § 160A-38 (h) (Cum. Supp. 1997).

In 1957 the North Carolina General Assembly created the Municipal Government Study Commission (the Commission) to study, among other things, the increasing difficulties experienced by municipalities across the state in providing for their sound economic development and growth under existing laws. N.C. Sess. Laws H.R.J. Res. 51 (1957).

The Commission issued two reports which were dated 1958 and 1959. In these reports, the Commission expressed concern for the need to balance the rights of property owners against the need for "soundly-governed, financially stable, attractive-to-live-in cities, with a high quality of municipal services." *Report of the Municipal Government Study Commission*, p. 6 (Supp. 1959). After examining the problems experienced by certain "case study cities," the Commission made recommendations on a new annexation procedure which would take into consideration these concerns. One such recommendation was that "[t]he land must be presently developed for urban purposes or undergoing urban development," meaning that:

(1) there has been substantial subdivision of land into lots and tracts of five acres or less, and/or (2) there has been substantial residential, commercial or industrial development along the streets or highways or in small communities, settlements or subdivision, and/or (3) there is a reasonable expectation that land not already subdivided or developed will soon be developed by reason of being a logical service area into which municipal water and sewer systems should be extended, or by reason of being adjacent to land now subdivided or developed for urban purposes.

*Id.* at p. 11. However, the Commission found that a municipality should not attempt to annex "large tracts of agricultural or vacant land where no evidence of urban development can be shown." *Id.*

After considering the Committee's reports, the General Assembly enacted legislation in 1959, now found in Chapter 160A of the North Carolina General Statutes, which announced that "sound urban development is essential to the continued economic development of North Carolina," and that municipal boundaries should be extended in order to provide governmental services to areas being used intensively for residential, commercial, industrial, institutional and governmental purposes in order to protect the health, safety and welfare of citizens in those areas. N.C. Gen. Stat. § 160A-33 (1994). However, the authority of a municipality to expand its boundaries is not unlimited and must be exercised in accordance with specific statutory requirements. *See R.R. v. Hook*, 261 N.C. 517, 520, 135 S.E.2d 562, 565 (1964); *see also Huntley v. Potter*, 255 N.C. 619, 627, 122 S.E.2d 681, 686 (1961).

When a party appeals from a municipality's adoption of an annexation ordinance, and there is a *prima facie* showing of substantial

compliance with the applicable statute, the party opposing annexation has the burden of showing, by competent evidence, that the municipality failed to substantially comply with the statutory requirements. *Thrash v. City of Asheville*, 327 N.C. 251, 255, 393 S.E.2d 842, 845 (1990). "Substantial compliance means compliance with the essential requirements of the Act." *Id.* (Citation omitted).

The applicable statute here is N.C. Gen. Stat. § 160A-36, which provides in pertinent part:

(a) A municipal governing board may extend the municipal corporate limits to include any area which meets the general standards of subsection (b), and which meets the requirements of subsection (c).

. . .

(c) The area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size. . . .

N.C. Gen. Stat. § 160A-36 (1994).

Subsection (c) of the statute contains two tests for determining the availability for annexation, the "use test" and the "subdivision test." *Lithium Corp. V. Bessemer City*, 261 N.C. 532, 538, 135 S.E.2d 574, 579 (1964). Under the use test, the municipality must show that at least 60% of the lots and tracts in the proposed area are actually being used for other than agricultural purposes, *i.e.*, residential, commercial, industrial, governmental or institutional purposes. *Id.* Under the subdivision test, the municipality must show that at least 60% of the acreage, not counting the acreage being used for commercial, industrial, governmental or institutional purposes, consists of lots and tracts of five acres or less in size. *Id.* In this appeal, we are presented with the question of whether the Town has substantially complied with the subdivision test requirement of the statute.

When applying the subdivision test, "the central inquiry is the degree of actual urbanization of the proposed area." *Shackelford v.*

AMERICAN GREETINGS CORP. v. TOWN OF ALEXANDER MILLS

[128 N.C. App. 727 (1998)]

*City of Wilmington,* 490 S.E.2d 578, 583 (N.C. Ct. App. 1997). This Court has held:

> [T]he accuracy of a subdivision test must reflect actual urbanization of the proposed area. The [Town's] subdivision test calculations must reflect actual urbanization, not reliance on some artificial means of making an annexation appear urbanized.

*Asheville Industries, Inc. v. City of Asheville,* 112 N.C. App. 713, 719, 436 S.E.2d 873, 877 (1993) (citation omitted). Therefore, in order for the Town to comply with the statutory requirements, there must exist some "actual, minimum urbanization" of the proposed annexation property. *Thrash v. City of Asheville,* 327 N.C. at 257, 393 S.E.2d at 846.

In *Shackelford v. City of Wilmington, supra,* this Court was confronted with a similar issue. There, the City of Wilmington enacted an annexation ordinance which included certain property referred to as the "Landfall Property." Petitioners contended that in order for land to be considered subdivided, "it must be subdivided into lots that 'are located on streets laid out and open for travel and [that] have been sold or offered for sale as lots' " in accordance with N.C. Gen. Stat. § 105-287 (d) (1997). 490 S.E.2d at 582. However, this Court found sufficient evidence of urbanization, in that the "Landfall Property" was actively being developed; final subdivision plats had been recorded which showed the entire area as being subdivided into lots and tracts five acres or less in size; and, twelve of the lots had already been sold. *Id.* at 583.

The facts of this case are inapposite to those of *Shackelford v. City of Wilmington,* in that the 4.29 acre tract is not currently under active development; a plat has never been recorded by either party which shows the subdivision of the Toms farm into lots and tracts of five acres or less in size; and, there is no evidence that the Toms family intends to sell any portion of the farm. Therefore, the 4.29 acre tract is not sufficiently "urbanized" to satisfy the statutory requirements.

We find further support for this in the Commission's 1958 report. There, the Commission suggested that in determining whether property was ripe for annexation, "[t]here [was] competent evidence to suggest that the average population density justifying the need for [annexation] is from one to two dwellings per acre, or from four to eight persons per acre." *Report of the Municipal Government Study Commission,* p. 11 (1958); *see also Rogers v. Municipal City of*

IN RE PHILLIPS

[128 N.C. App. 732 (1998)]

*Elkhart,* 1997 WL 739470 (Ind. 1997) (where the Court noted that property may be characterized as urban if "[t]he resident population density of the territory sought to be annexed is at least three (3) persons per acre." *Id.* at 2). In this case, the 33.53 acre Toms farm contains two occupied houses surrounded by acres of fields. This is not sufficient to justify a need for annexation of the 4.29 acre tract.

After a careful review of the record, we conclude that the petitioners have met their burden of showing by competent evidence that the Town has failed to comply with the subdivision test requirement under N.C. Gen. Stat. § 160A-36 (c), and the trial court erred in affirming the annexation ordinance.

Reversed.

Judges EAGLES and WYNN concur.