SOUTHERN RAILWAY COMPANY, Petitioner v. GEORGE HOOK, Mayor; P. L. LUTZ, MILES L. RHYNE, CARL G. CARPENTER, WALTER J. HEATHERINGTON, ROY J. BULLARD, JR., and CEASAR RAMSEY, Councilmen of the Town of Bessemer City, North Carolina; and TOWN OF BESSEMER CITY, NORTH CAROLINA, Respondents.

(Filed 8 April, 1964.)

1. **Municipal Corporations § 2—**

   A proceeding by a municipality to annex territory pursuant to G.S. 160-453.1 et seq., is summary in nature and the material statutory requirements must be complied with.

2. **Same—**

   Where about a tenth of a tract of land, marked off by a bumper strip or barrier, is used for parking, and the rest of the tract is graded and held by the owner for possible future industrial development, *held*, the vacant part of the tract is not "used" for industrial purposes within the purview of G.S. 160-453.4(c).

APPEAL by petitioner, Southern Railway Company, from *Riddle, S.J.,* September 16, 1963, Civil Session of GASTON.

*W. T. Joyner, Jr.; Mullen, Holland & Cooke; Geo. B. Mason for Petitioner appellant.*

*Henry L. Kiser and Hugh W. Johnston for defendants, appellees.*

MOORE, J.   This is a proceeding for the extension of the corporate limits of Bessemer City, N. C., pursuant to General Statutes, Chapter 160, Subchapter VI, Article 36, Part 2 (G.S. 160-453.1 to G.S. 160-453.12). Bessemer City has a population of less than 5000.

On 10 December 1962 the governing board adopted a resolution stating the intent of the municipality to extend its limits to include an area of 63.29 acres which adjoins its eastern boundary. A report of plans

for extension of city services to the area proposed for annexation was adopted and filed. Notice of a public hearing on the proposed annexation was given, and the hearing was held, pursuant to the notice, on 14 January 1963. On 4 February 1963 an annexation ordinance was adopted.

The area proposed for annexation includes a segment of the right of way of the Southern Railway Company, about two-fifths of a mile long. In apt time the Railway Company petitioned for review, pursuant to G.S. 160-453.6. It alleges, among other things, that the area sought to be annexed is not subject to annexation in that it is not developed for urban purposes within the meaning of G.S. 160-453.4(c), which provides as follows:

> "The area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which is so developed that at least sixty per cent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty per cent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size."

The annexation ordinance declares: The number of lots and tracts in the area is 34, of which 12 are vacant, and 22 are in use — residential 14, commercial 3, industrial 5. Thus 65% of the lots and tracts are in use. The total residential and undeveloped acreage is 36. Of this, the acreage in lots and tracts of five acres and less in size is 24, or 66%.

On the other hand, the Railway Company's petition alleges: The number of lots and tracts in the area is 186, of which 81 are vacant. Only 56.5% of the lots and tracts are in use. The total residential and undeveloped· acreage is 50.23. Of this, the acreage in lots and tracts of five acres and less is 24.73, or 49% only.

The petitioner and the municipality each offered evidence which, they contend, tends to support their respective analyses of the makeup of the area. It is not necessary to consider and discuss the wide discrepancy in the evidence as to the number of lots and tracts in the area. The crucial question on this appeal involves the proper classification of a tract of land owned by Ideal Industries, Inc., and situate on the north side of Highway 274. It contains 13.747 acres, of which about one-tenth (1.4 acres) is used for parking. There are no buildings or structures of any kind on the tract. The plant and buildings of

Ideal Industries are in the area proposed for annexation, but are on tracts and lots which do not adjoin this 13.747 acre tract. It is conceded that if, as petitioner contends, the part of the tract not used for parking (more than 12 acres) is vacant unused land, the area sought to be annexed to the City clearly does not meet the requirements of G.S. 160-453.4(c).

The evidence concerning the 13.747 acre tract is as follows:

(1). Charles H. Davis, Jr., registered engineer, testified for petitioner: ". . . (T)he property shown (on map) labeled 'Ideal Industries, Inc.', of 13.747 acres is vacant property; the front of it is used for parking. . . . The area I have shown (on map) and denominated 'Parking' is used for nothing but the parking of automobiles. This is delineated by a bumper strip or barrier at the back of it." (Cross Examination) "I testified that there was 25.503 acres of undeveloped land over five acres in size. That involves two tracts, one of J. A. Bess (Best) estate which is on the West end of the area, and the other is the Ideal Industries tract on the East end of the area. . . . I also designate the 13.747 acres lying on the North side of Highway 274 as belonging to Ideal Industries. About 90% of the property North of the highway I designate as being undeveloped, and I designate a small portion of it as parking. . . . I did not talk to anyone from Ideal Industries about the property I designated as to why it was undeveloped."

(2). C. Jack Costner, Secretary of Ideal Industries, Inc., testified for respondents: "The tract of land owned by Ideal Industries on the North side of 274 at this time has been graded." In January 1963 it was used for a "cow pasture." Before the first of the year "we had plans to, actually, at that time to move our entire operation across the road and the plans — that is, at some future time — not at this, you know, we didn't have any particular date set when we would move, but that road is a line on a water shed. . . . In regard to our plans prior to the first of the year to use this for industrial purposes, we had graded about 30 to 35 thousand yards of dirt and practically levelled about 14 acres of it. . . . Our plans are to move as fast as business requires us to expand because we have no further room where we have to expand. That was the purpose of buying the property in the first place." (cross Examination). ". . . (T)he land we acquired was half of Miss Martha Torrence's farm, and at that time it was a cow pasture . . ., and the only pasturing done was of animals that some fellow who lives on Dr. Froneberger's place was using . . ., I believe it was a cow pasture. . . . Right at this time there is some discussion (of

plans) but no concrete plans of any sort." On February 4, 1963, there was no use whatever being made of this land by Ideal.

(3). Clyde Robinson, expert engineer and surveyor, testified for respondents: "I consulted with Mr. Costner and other officials at Ideal, we asked them how they considered that there was a question in our mind as to whether it was vacant or should be considered as being held for future expansion and so forth; and they told us they considered it industrial. . . . As a result of our consultation with the owners we placed this land in the category of industrial." (Cross Examination). "The land was vacant except for the parking lot at the time I examined it. I didn't see any cows. . . . My interpretation as to its then use was based upon what Mr. Costner told me he considered the use of the land, and I in my own mind considered the use was predicated upon what they had purchased it for at that time. . . . (T)here wasn't any use being made of the land at that time."

The municipality classified the entire 13.747 acre tract of Ideal Industries, Inc., as property in use for industrial purposes. The court below found that this classification was proper. This is error. G.S. 160-453(c) employs the expression ". . . are *used* for . . . industrial purposes . . ." The verb "use" means "to put into . . . service." Webster's Third New International Dictionary — Unabridged (1961). The proceeding employed by the municipality in this instance is summary in nature, and material statutory requirements must be complied with. *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681. There is no evidence that the twelve acres of land in question were being used either directly or indirectly for industrial purposes. All of the evidence tends to show that it was not being *used* for any purpose. When Ideal Industries purchased the land, it was pasture and farm land; Ideal Industries graded it. It is being held for possible industrial use at some indefinite future time. It is industrially owned but not industrially used. A small space next to the highway is used for parking; the evidence does not show, but we assume, that the parking of automobiles on this space is incidental to the business of Ideal Industries. This space may be reasonably classified as in use for industrial purposes. This user does not determine the character of the other 90% of the tract, which is undeveloped and serving no active industrial purpose.

The area sought to be annexed does not qualify for annexation under G.S. 160-453.4(c). It is not subdivided into lots and tracts such that at least 60% of the total acreage, not counting the acreage *used* at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

This proceeding is remanded to superior court for judgment not in conflict with this opinion. If so advised, respondents may move in superior court for remand of the proceedings for amendment of boundaries, and for other amendments and proceedings. See G.S. 160-453.6 (g); *Huntley v. Potter, supra.* If the municipality does not desire remand to the governing board, the proceedings will be dismissed.

We make no decision with respect to questions raised on this appeal and not discussed in this opinion. If the matter is remanded to the governing board for amendment and further proceedings, other objections presently urged may be obviated.

Error and remanded.