ASHEVILLE INDUSTRIES, INC., A NORTH CAROLINA CORPORATION, JERRY CHANDLER AND WIFE, ROBIN CHANDLER, EATON CORPORATION, AN OHIO CORPORATION, WILLIAM CLOUD HICKLIN, JESSIE R. LAW, JR., FRANCIS L. MATTOS AND WIFE, FLOY E. MATTOS, PHILIPS CONSUMER ELECTRONICS COMPANY, A DIVISION OF NORTH AMERICAN PHILIPS, A DELAWARE CORPORATION, HAYWOOD PLOTT AND WIFE, RUTH PLOTT, ALBERT SHINGLES AND WIFE, VIRGINIA SHINGLES, JOSEPH C. SWICEGOOD AND WIFE, DOROTHY C. SWICEGOOD, TENNESSEE GAS PIPELINE COMPANY, A DELAWARE CORPORATION, WEST CONTROLS, INC., A DELAWARE CORPORATION, GRACE WEST, WESTINGHOUSE ELECTRIC CORPORATION, A PENNSYLVANIA CORPORATION, A. B. WEXLER AND WIFE, PHYLLIS WEXLER, WILLA M. WITHERSPOON, PETITIONERS v. CITY OF ASHEVILLE, A MUNICIPAL CORPORATION, RESPONDENT

No. 9228SC569

(Filed 7 December 1993)·

1. **Municipal Corporations § 45 (NCI4th)— annexation proceeding—initiation by resolution of intent**

    A resolution of intent and not a resolution of consideration initiates an annexation proceeding pursuant to N.C.G.S. § 160A-48.

    **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 70 et seq.**

2. **Municipal Corporations §§ 72, 74 (NCI4th)— annexation—area not separate lots—insignificant industrial use**

    The trial court erred in finding that a certain area to be annexed consisted of twenty separate lots and that part of the area was properly identified as industrial in use, since the evidence tended to show that the lots all belonged to one person who had lived on the property since 1930; there were no improvements to the property except the owner's house, barn, and an outbuilding; there were no conveyances of lots; only one road had been built since the owner acquired the land in 1930; the property therefore could not properly be counted as subdivided and used for residential purposes;

ASHEVILLE INDUSTRIES, INC. v. CITY OF ASHEVILLE

[112 N.C. App. 713 (1993)]

the only industrial development on the land was a .79-acre easement which carried 230,000 volt high tension lines supported by steel towers; and this industrial use was insignificant compared to the nonindustrial use of the entire 36.22-acre tract.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 66 et seq.**

3. **Municipal Corporations §§ 59, 68 (NCI4th) — annexation — failure to meet subdivision requirement — margin of error exceeded**

An area sought to be annexed by the City of Asheville failed to meet the 60% minimum required under the subdivision test of N.C.G.S. § 160A-48(c)(3), since only 56.41% of the land was comprised of lots and tracts five acres or less in size; furthermore, the difference between that figure and the City's original figure of 64% exceeded the statutorily permissible five percent margin of error.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 66 et seq.**

Appeal by petitioners from judgment entered 9 January 1992 by Judge Shirley L. Fulton in Buncombe County Superior Court. Heard in the Court of Appeals 29 April 1993.

This is an appeal brought pursuant to North Carolina General Statutes § 160A-50 (1987) for judicial review of an ordinance of the City of Asheville to annex into its corporate limits an area south of the City.

*Adams, Hendon, Carson, Crow & Saenger, P. A., by S. Jerome Crow and Martin Reidinger, for petitioners-appellants.*

*Nesbitt & Slawter, by William F. Slawter, for respondent-appellee.*

*Assistant City Attorney Sarah Patterson Brison for respondent-appellee.*

JOHNSON, Judge.

The facts pertinent to this appeal are as follows: The City Council of Asheville identified an area south of the corporate limits of the City of Asheville for annexation by adopting a resolution considering the proposed area on 2 June 1987. The property under

ASHEVILLE INDUSTRIES, INC. v. CITY OF ASHEVILLE

[112 N.C. App. 713 (1993)]

consideration became adjacent or contiguous to the City's boundary on 31 August 1988. On 28 February 1989, the City Council adopted a resolution which stated the intent of the City of Asheville to consider the proposed area. On 14 March 1989, the City Council adopted a resolution which approved the report setting forth plans to provide services to the annexation area. The public hearing on this annexation was held on 18 April 1989.

An annexation ordinance was adopted on a first reading on 2 May 1989 and on a second reading on 9 May 1989. The annexation ordinance incorporated specific findings of the City that the annexation area met the subdivision test of North Carolina General Statutes § 160A-48(c)(3)(1987). On 16 May 1989, the City Council amended the report of plans for extension of municipal services into the annexation area by adoption of a resolution which annexed the proposed area. The annexation ordinance established an effective date of 30 June 1989. The effective date was stayed by the filing of a petition on 13 June 1989.

The matter came on for hearing before Judge Shirley L. Fulton on 27 November 1989 in Buncombe County Superior Court. Based upon the evidence presented at trial, the trial court affirmed City Ordinance 1761. The trial court held that the City had substantially complied with the statutory requirements of North Carolina General Statutes § 160A (1987) in the City's annexation procedures. Petitioners appeal from this judgment.

Petitioners' First Assignment of Error

[1] Petitioners contend with their first assignment of error that the trial court committed reversible error by finding and concluding that the annexation area met the requirements of North Carolina General Statutes § 160A-48(b)(1) (1987). We disagree.

Specifically, petitioners contend the annexation process was invalid because the annexed area was not contiguous when the annexation process was begun. Petitioners contend the annexation process was initiated by the resolution of consideration which was adopted on 2 June 1987 and that the annexation area did not qualify for annexation on 2 June 1987 because it was not contiguous at that time. However, respondent contends the annexation proceeding was initiated by the resolution of intent which was adopted on 16 February 1989 and that the annexation area was contiguous on 16 June 1989 thereby qualifying the property for annexation.

Therefore, we must determine whether the annexation proceeding is initiated by the resolution of consideration or the resolution of intent.

North Carolina General Statutes § 160A-48(b)(1) (1987) states in pertinent part that "to qualify for annexation the total area to be annexed must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun." The procedure to initiate an involuntary annexation proceeding is detailed in North Carolina General Statutes § 160A-49 (1987). This statute mandates that the municipal governing body must either provide that: (1) a resolution of consideration is adopted and then a resolution of intent is adopted with the requirement that the resolution of intent not be adopted until at least one year has passed since adoption of the resolution of consideration, North Carolina General Statutes § 160A-49(i) (1987), or (2) a resolution of intent describing the area and an ordinance to annex the area both provide that the effective date of the annexation shall be at least one year from the date of passage of the annexation ordinance. North Carolina General Statutes § 160A-49(j) (1987).

Petitioners argue that the resolution of consideration should be the controlling date of initiation because the City chose to proceed under North Carolina General Statutes § 160A-49(i). However, we find the Supreme Court in *Town of Hazelwood v. Town of Waynesville*, 320 N.C. 89, 357 S.E.2d 686, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 106 (1987) rejected such an analysis. The Court acknowledged that the first mandatory public procedural step for a municipality choosing to proceed with involuntary annexation under North Carolina General Statutes § 160A-37(i) (1987) (the procedure for towns of less than 5,000 which is comparable to the provision found in North Carolina General Statutes § 160A-49(i) for towns of 5,000 or more) is a resolution of consideration. However, the Court stated that the procedure stated in subsection (i) is itself an option. The Court held that the first mandatory public procedural step common to both means of initiating involuntary annexation, North Carolina General Statutes § 160A-37(i) or (j), is the passing of a resolution of intent. Therefore, the Court determined the critical step in initiating an annexation proceeding under either subsection is the resolution of intent. *Id.* at 93, 357 S.E.2d at 688.

The *Hazelwood* Court reasoned that North Carolina General Statutes § 160A-37 mandates a waiting period of at least one year

before involuntary annexation may be completed, whether a municipality chooses to pass a resolution of consideration one year prior to its resolution of intent or whether it chooses simply to delay the effective date of the annexation ordinance for at least one year after passage of the resolution of intent. The statute does not require that involuntary annexation be initiated with a resolution of consideration; it does require a lengthy period of consideration preceding either the mandatory resolution of intent or the effective date of the annexation ordinance. *Hazelwood*, 320 N.C. 89, 357 S.E.2d 686.

The *Hazelwood* Court further noted that the resolution of consideration merely gives residents of the proposed area time within which to anticipate and adjust to the proposed annexation. It is only with the adoption of the resolution of intent that a municipality actually begins the annexation of a specific area.

In our determination of whether the resolution of intent or the resolution of consideration initiates an annexation proceeding pursuant to North Carolina General Statutes § 160A-48, we adopt the reasoning of the *Hazelwood* Court and find the resolution of intent initiated the involuntary annexation process. We affirm the trial court's ruling on this issue.

### Petitioners' Second Assignment of Error

[2] Petitioners contend with their second assignment of error that the trial court erred by finding and concluding that the annexation area met the requirements of the subdivision test of North Carolina General Statutes § 160A-48(c)(3). More specifically, petitioners argue that the trial court erred in finding and concluding that Study Area #7 consisted of twenty separate lots and that part of Study Area #7 was properly identified as industrial in use. We agree.

North Carolina General Statute § 160A-48(c)(3) states in pertinent part:

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

. . .

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of

ASHEVILLE INDUSTRIES, INC. v. CITY OF ASHEVILLE

[112 N.C. App. 713 (1993)]

annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

North Carolina General Statutes § 160A-48(c)(3).

Part of the property that respondent Asheville sought to annex was recorded on a plat showing a 90 acre tract as divided into subdivision lots in 1921 by Henry Yandey. This included the 36.22 acres that is now the Hicklin property, Study Area #7.

The trial court made the following findings pertaining to the Hicklin property:

1. Prior to May 2, 1989, the Buncombe County tax records showed this Study Area #7 to be approximately 20 separate tax lots or tracts all owned by W. C. Hicklin.

2. These lots or tracts are shown as separate lots or tracts on recorded plats recorded in the Buncombe County Register of Deeds in Plat Book 3 at Pages 21 and 21A and in Plat Book 198 at Page 226A and 226B.

3. On May 2, 1989, at the request of W. C. Hicklin, the Buncombe County tax office consolidated all of these old tax lots and tracts into a single lot or tract identified as Lot 48.

4. This Study Area contains 36.22 acres.

5. The size of that portion formerly known at [sic] Lot 46 is 14.39 acres.

. . .

In light of this Court's previous ruling that the City has complied with the statute in making its calculations and used methods which produced reasonably accurate results, the Court would hold that the City was correct in counting this Study Area as 20 separate lots.

Findings of fact made below are binding on the appellate court if supported by the evidence, even where there may be evidence to the contrary. *Humphries v. City of Jacksonville*, 300 N.C. 186,

187, 265 S.E.2d 189, 190 (1980). Petitioners argue that the trial court's findings were not supported by the evidence in that the classification of the Hicklin property was inaccurate causing inaccurate results of the subdivision test for purposes of meeting the requirements of North Carolina General Statutes § 160A-48.

Where an appeal is taken from adoption of an ordinance and the proceedings show prima facie that there has been substantial compliance with the statute, the burden is on the petitioners challenging the ordinance to show competent evidence that the City in fact failed to meet the statutory requirements. *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E.2d 851 (1971).

North Carolina General Statutes § 160A-54 (1987) provides that municipalities seeking to annex new areas into their corporate limits must "use methods calculated to provide reasonably accurate results" in determining the degree of land subdivision for purposes of meeting the requirements of North Carolina General Statutes § 160A-48. In reviewing whether the requisites of North Carolina General Statutes § 160A-48 have been met, the court must accept the estimate as to the degree of land subdivision by the municipality

if the estimates are based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable source, unless the petitioners on appeal show that such estimates are in error in the amount of five percent (5%) or more.

North Carolina General Statutes § 160A-54(3) (1987).

In addition, the North Carolina Supreme Court in *Thrash v. City of Asheville*, 327 N.C. 251, 393 S.E.2d 842 (1990) held that the accuracy of a subdivision test must reflect actual urbanization of the proposed area. The City's subdivision test calculations must reflect actual urbanization, not reliance on some artificial means of making an annexation appear urbanized. *Id.*

In the instant case, the city planner for respondent Asheville testified that in assessing whether the annexation area met the subdivision test she used aerial photographs of the area, on site inspections of the lots and tracts involved and tax records, including orthophotographic maps. As for the Hicklin property specifically, the city planner used the Buncombe County tax records which showed the Study Area to be approximately twenty separate tax lots or tracts all owned by W. C. Hicklin and the Buncombe County

Register of Deeds Office which showed separate lots or tracts on recorded plats.

However, record evidence showed no actual urbanization of the Hicklin property. The Hicklin property contains twenty of the forty-nine lots as shown on the original 1921 plat. The parties stipulated at trial that the Hicklin property contained 36.22 acres. Mr. W. C. Hicklin testified that he has maintained his home on the property since 1930; that there have been no improvements on the 36.22 acres except the Hicklin's residence, his barn and outbuildings; that there have been no conveyances of any lots within the 36.22 acre tract since he acquired the land; and that only one road had been built since he acquired the land in 1930. Additional evidence revealed a .79 acre easement acquired by CP&L.

Classification of subdivisions are limited to tracts "that have been divided into lots that are located on streets laid out and open for travel and that have been sold or offered for sale as lots." North Carolina General Statutes § 105-287(b)(4) (1985).

We find the evidence, in the case *sub judice*, does not support the trial court's findings that the Hicklin property was twenty separate lots. The accuracy of the record evidence proffered by the City is belied by evidence before the reviewing Court of the actual condition of the property. Such records are not a "reasonably reliable" basis upon which estimates may be made for purposes of determining subdivision. *Thrash*, 327 N.C. at 251, 393 S.E.2d at 842. It was therefore error to include the Hicklin property among the acreage counted as subdivided and used for residential purposes. North Carolina General Statutes § 160A-48(c)(3).

Petitioners also argue in their second assignment of error that former lot 46 which is part of the Hicklin property was classified incorrectly as an industrial use. Our Supreme Court has held that an area proposed for annexation is improperly classified as property in use for industrial purposes where there is no evidence that the land in question is being used either directly or indirectly for industrial purposes. *R. R. v. Hook*, 261 N.C. 517, 135 S.E.2d 562 (1964). When compliance with the statutory requirements is in doubt, the determination of whether an area is used for a purpose qualifying it for annexation will depend upon the particular circumstances. *Lithium Corp. v. Bessemer City*, 261 N.C. 532, 135 S.E.2d 574 (1964). Where there has been no showing that the extent of industrial use was insignificant as compared to nonindustrial

use, petitioner has failed to carry his burden to demonstrate a misclassification. *Food Town Stores, Inc. v. City of Salisbury*, 300 N.C. 21, 265 S.E.2d 123 (1980).

From our earlier determination that the Hicklin property was not twenty separate lots but one 36.22 acre tract of land, we examine the evidence presented by petitioners. Petitioners' evidence revealed that former lot 46 is part of the 36.22 acre tract known as the Hicklin property. The City subdivided the 36.22 acre Hicklin property into twenty separate lots and determined that former lot 46 comprised 14.39 acres. The 14.39 acre lot is bisected by a .79 acre easement used by CP&L. The .79 acre easement carries 230,000 volt high tension lines which are supported by steel towers. Other than the power lines, there are no other structures located on the 14.39 acres of land. The remaining 21.83 acres of the Hicklin property are used for residential purposes.

Because we no longer consider the land as twenty separate lots but one large 36.22 acre tract, we find the industrial use of the property is insignificant compared to the nonindustrial use of the entire 36.22 acre tract, and therefore, the petitioners have carried their burden that the property was incorrectly classified as industrial in use.

[3] We now consider whether the subdivision test has been met. The trial court found that the total vacant and residential acreage in the annexation area was 437.37 acres. Of that amount, the trial court found that 272.58 acres was comprised of lots and tracts five acres or less in size. Based thereon, the trial court determined the percentage to be 62.32%.

However, when the Hicklin property is counted as one lot, when former lot 46 is classified as part of the one large Hicklin tract and when the stipulated acreage of the Hicklin property, 36.22, is added, 461.18 is the total amount of vacant and residential acreage. Of that 461.18 acres, 260.17 acres are comprised of lots and tracts five acres or less in size. Based on the new calculations, we determine the percentage to be 56.41%. The annexation area fails to meet the 60% minimum required under the subdivision test of North Carolina General Statutes § 160A-48(c)(3). Moreover, the difference between that figure and respondent Asheville's original figure of 64% exceeds the statutorily permissible five percent margin of error. North Carolina General Statutes § 160A-48(c)(3).

Respondent's Cross-assignment of Error

Respondent contends with its cross-assignment of error that the trial court committed error in finding that Study Areas 9, 10, and 11 were industrial in use within the meaning of North Carolina General Statutes § 160A-48(c)(3).

Where a finder of fact makes a determination, it will be left undisturbed on appeal if there is competent evidence to support it. *Lemmerman v. A. T. Williams Oil Co.*, 318 N.C. 577, 350 S.E.2d 83, *reh'g denied*, 318 N.C. 704, 351 S.E.2d 736 (1986). We have examined the record evidence and find that each of the trial court's findings of fact is supported by competent evidence, the testimony of James Baldwin, right-of-way agent for CP&L. We find there was no error.

Because petitioners succeeded in their burden of showing by competent evidence that respondent Asheville has failed to comply with the statutory requirements for annexation, the trial court erred in affirming Ordinance No. 1761.

The decision of the trial court is reversed.

Judges ORR and McCRODDEN concur.