RIDGEFIELD PROPERTIES, L.L.C., RIDGEFIELD WOMEN'S CANCER CENTER PROPERTIES, L.L.C., CONTINENTAL TEVES, INC., ASHEVILLE ENDOCRINOLOGY PROPERTIES, L.L.C., RIDGEFIELD BUSINESS CENTER PROPERTY OWNERS ASSOCIATION, INC., GEORGE W. BEVERLY JR., HIGHWOODS REALTY LIMITED PARTNERSHIP, HIGHWOODS/FORSYTH LIMITED PARTNERSHIP AP SOUTHEAST PORTFOLIO PARTNERS, L.P., PETITIONERS v. CITY OF ASHEVILLE, A NORTH CAROLINA MUNICIPAL CORPORATION, RESPONDENT

No. COA02-1110

(Filed 5 August 2003)

## 1. Cities and Towns— annexation—use test—ordinance invalid

The trial court erred by concluding that respondent city's annexation ordinance substantially complied with the "use test" of N.C.G.S. § 160A-48(c)(3) and therefore respondent's annexation ordinance is null and void, because: (1) future plans for use are irrelevant in determining whether a property may be involuntarily annexed; and (2) the proper inquiry is the actual use at the time of annexation.

## 2. Appeal and Error— substantial compliance for annexation—issue already resolved

Although petitioners contend the trial court erred by concluding that respondent city substantially complied with its annexation statute in combining the three pertinent lots into one tract and then counting that tract as a tract in commercial use, the merits of this argument need not be reached because the associated assignments of error are resolved by the Court of Appeals' preceding analysis reversing the trial court's classification of lots under development as commercial.

Judge McCULLOUGH dissenting.

Appeal by petitioner from judgment entered 20 February 2002 by Judge Richard L. Doughton in Superior Court, Buncombe County. Heard in the Court of Appeals 5 June 2003.

*Adams, Hendon, Carson, Crow & Saenger, P.A., by S.J. Crow and Martin K. Reidinger, for petitioners-appellants.*

*Robert W. Oast, Jr., City Attorney and William F. Slawter, P.L.L.C., by William F. Slawter for respondent-appellee.*

## RIDGEFIELD PROPS., L.L.C. v. CITY OF ASHEVILLE

[159 N.C. App. 376 (2003)]

WYNN, Judge.

This appeal arises from a determination that the City of Asheville ("Asheville") substantially complied with the provisions of N.C. Gen. Stat. § 160A-48 (2002) in its annexation of the Ridgefield Area. On appeal, individual and corporate residents of the proposed annexed area ("the Ridgefield Parties") challenge the involuntary annexation of their properties by assigning error to the trial court's conclusions of law that: (1) tracts of land, which are under construction, can be classified as commercial property to meet the statutory requirement that at least sixty percent of the tracts in an area to be annexed must be used for commercial purposes at the time of annexation; and (2) that Asheville's combination of three tracts into one tract, and its commercial classification of the combined tract, was permissible because the tracts shared a "common owner and were used for a common purpose." After carefully reviewing the record, we reverse the trial court and hold that Asheville's annexation ordinance does not substantially comply with Section 160A-48 for the reasons stated herein. Accordingly, we hold that Asheville's annexation ordinance is null and void.

On 15 March 2000, Asheville adopted a resolution of intent to annex the Ridgefield Area ("the Service Plan"). After conducting a public informational hearing on the issue of annexation, Asheville officially adopted the annexation ordinance on 13 June 2000 with an effective date of 30 June 2001. On 9 August 2000, the Ridgefield Parties filed a petition for review of the annexation ordinance in Superior Court, Buncombe County, pursuant to N.C. Gen. Stat. § 160A-50. During a bench trial, held on the week of 10 December 2001, the Ridgefield Parties argued that Asheville failed to follow statutory procedures and failed to comply with the statutory mandates of N.C. Gen. Stat. §§ 160A-47 and 160A-48. After reviewing a comprehensive record of the Service Plan filed pursuant to N.C. Gen. Stat. § 160A-50(c), considering evidence, and hearing arguments from counsel, the trial court entered judgment for Asheville. On appeal, the Ridgefield Parties limit their challenge to Asheville's failure to comply with the statutory mandates of Section 160A-48.

## A. Standard of Review

Pursuant to N.C. Gen. Stat. § 160A-50, a party challenging an annexation ordinance may seek judicial review in Superior Court and, thereafter, in the Court of Appeals and Supreme Court. "Judicial review of an annexation ordinance is limited to determining whether

the annexation proceedings substantially comply with the requirements of the applicable annexation statute." *Barnhardt v. City of Kannapolis*, 116 N.C. App. 215, 217, 447 S.E.2d 471, 473 (1994). "Absolute and literal compliance with [the annexation] statute . . . is unnecessary." *In re New Bern*, 278 N.C. 641, 648, 180 S.E.2d 851, 856 (1971). "The party challenging the ordinance has the burden of showing error." *Knight v. Wilmington*, 73 N.C. App. 254, 255, 326 S.E.2d 376, 377 (1985) "On appeal, the findings of fact made below are binding on this Court if supported by the evidence, even when there may be evidence to the contrary." *Humphries v. Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980). However, "conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Barnhardt*, 116 N.C. App. at 217, 447 S.E.2d at 473.

## B. The Use Test

**[1]** By their first and second arguments, the Ridgefield Parties contend the trial court erred in finding Asheville's annexation ordinance in substantial compliance with the "use test" of N.C. Gen. Stat. § 160A-48(c)(3). Furthermore, after appropriate adjustments are made to correct these errors, the Ridgefield Parties contend the Ridgefield Area does not qualify for annexation under the "use test," and, therefore, the annexation ordinance is null and void. After carefully reviewing the record, we agree.

Pursuant to N.C. Gen. Stat. § 160A-48(c)(3):

(c) Part or all of the area to be annexed must be developed for urban purposes at the time of approval of the report provided for in G.S. 160A-47 [The Service Plan]. . . . An area developed for urban purposes is defined as any area which meets any one of the following standards:

. . .

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes . . . .

Accordingly, in order to apply this test, Asheville was required to make a determination about the "use" of each lot in the Ridgefield Area before approving its Service Plan. As of 15 March 2000,

Asheville's Service Plan reflected a "determination that 22 of 32 lots in the Ridgefield Area, or 68.75%, were in use for one of the statutorily enumerated qualifying purposes." After a bench trial, the trial court affirmed this determination. According to the Ridgefield Parties, however, Asheville and the trial court erred by classifying certain lots as commercial, where those lots were under construction—and, therefore, not developed or "in use"—at the time the Service Plan was approved on 15 March 2000.

The facts pertaining to the construction of these lots is not in dispute. Accordingly, the Ridgefield Parties and Asheville substantially accept the trial court's findings of fact that:

17. [The Ridgefield Parties] contend that six lots within the Ridgefield Area that were designated in the Service Plan as being in commercial use were not in fact in use at the time of adoption of the Service Plan on March 15, 2000. Three of the lots [7588, 8412, and 8597] . . . . had been occupied by mobile homes, a site-built home, and a tavern at or about the time that the City began to study the Ridgefield Area for annexation.

18. At or about the time of adoption of the Service Plan, the structures on the [three] properties identified above had been demolished, the site had been graded, the retaining wall constructed, building permits had been issued, and those properties were being redeveloped for combined use as a strip shopping center, which use is there now.

19. The other three properties [9962, 2253, and 2633] . . . are all located within [Ridgefield Business Center] . . . .

20. . . . On [a] February 2000 visit, [Asheville] observed activity on each of the sites identified in Finding No. 19—grading, construction equipment, partial structures—indicating that the sites were being developed for commercial uses, the only use allowed under the restrictive covenants that governed [the Ridgefield Business Center]. Petitioners' own evidence indicated that, as of March 15, 2000, construction was 28% complete with respect to the building on one of the identified lots, and 50% complete with respect to another. . . . All three buildings are currently in use for commercial purposes as professional offices.

Based upon these detailed findings of fact, the trial court made the following conclusions of law which the Ridgefield Parties challenge:

3. (a) The three properties [7588, 8412, and 8597] had previously been used for a combination of commercial and residential purposes, and were under redevelopment as a shopping center as of March 15, 2000, when the Service Plan was adopted, and were properly classified therein as in being in commercial use.

   (b)  The three properties [9962, 2253, and 2633] were under development as professional or medical offices as of March 15, 2000, when the Service Plan was adopted, and were properly classified therein as in being in commercial use.

For the Ridgefield Parties, Section 160A-48(c)(3) is quite clear in requiring that sixty percent of the annexed area "must *be developed* for urban purposes at the time of approval of the [Service Plan] report." (emphasis added). Accordingly, the Ridgefield Parties contend it was error for the trial court to equate the act of construction with the state of development. We agree.

In *Arquilla v. City of Salisbury*, 136 N.C. App. 24, 523 S.E.2d 155 (1999), this Court invalidated Salisbury's annexation ordinance. Salisbury attempted to classify certain lots as used for a "government purpose." Salisbury argued, and the trial court agreed, that this classification substantially complied with the statute because the lots previously housed a government animal shelter, and, furthermore, the lots were the subject of future plans for an airport. In invalidating the ordinance, we noted that "the *use* of property determines whether it may be involuntarily annexed," and that, based upon the statute, "[a]ctual minimum urbanization is an essential requirement of the annexation act." *Id.* at 31, 523 S.E.2d at 161 (emphasis added). Because of its character as an essential element, we held that government statistics supporting annexation "must reflect actual urbanization, not reliance on some artificial means of making an annexation appear urbanized." *Id.* at 32, 523 S.E.2d at 161. After responding to Salisbury's arguments in *Arquilla*, based substantially upon past and future use, we made it eminently clear that "future plans for use are irrelevant in determining whether a property may be involuntarily annexed. Instead, the proper inquiry is the actual use at the time of annexation." *Id.* at 36, 523 S.E.2d at 164.

Asheville attempts to distinguish *Arquilla* by arguing that "the lots [in *Arquilla*] were not under development or in active use for any purpose." In contrast, Asheville notes that in the case *sub judice* the lots 9962, 2253, and 2633 were actively under construction with the intent of creating commercial structures on 15 March 2000. However, in *Southern R. Co. v. Hook*, 261 N.C. 517, 135 S.E.2d 562 (1964), our Supreme Court reversed the trial court's determination that twelve acres of land were held for an industrial use despite the fact that the property had been graded and was clearly ready and zoned for industrial use. In *Hook*, our Supreme Court held:

> There is no evidence that the twelve acres of land in question were being used either directly or indirectly for industrial purposes. All of the evidence tends to show that it was not being used for any purpose. When Ideal Industries purchased the land, it was pasture and farm land; Ideal Industries graded it. It is being held for possible industrial use at some indefinite future time. It is industrially owned but not industrially used.

*See also Lithium Corp. of America, Inc. v. Bessemer City*, 261 N.C. 532, 135 S.E.2d 574 (1964); *Asheville Industries Inc. v. City of Asheville*, 112 N.C. App. 713, 436 S.E.2d 873 (1993).

Furthermore, Asheville's attempt to distinguish prior case law does not relieve Asheville of its difficult burden of responding to the ordinary, clear, and unequivocal meaning of the terms "must *be developed* for urban purposes at the time" of the annexation Service Plan in N.C. Gen. Stat. § 160A-48(c)(3). Our Supreme Court has made it clear that "[w]ords in a statute generally must be construed in accordance with their common and ordinary meaning, unless a different meaning is apparent or clearly indicated by the context." *State v. Hearst*, 356 N.C. 132, 137, 567 S.E.2d 124, 128 (2002). In the case *sub judice*, we cannot find a meaning for "must be developed" that equates to "under the process of development;" accordingly, we must reverse the trial court's decision that lots 9962, 2253, and 2633, which were under construction for commercial use, were in "actual commercial use" for the purposes of Section 160A-48(c)(3).

[2] By their second argument, the Ridgefield Parties contend the trial court erred in finding that Asheville substantially complied with the annexation statute in combining lots 7588, 8412, and 8597 into one tract, and then counting that tract as a tract in commercial use. Under well settled law, when "appraising an area to be annexed[,] one of the methods which can be used to determine what is a tract is to consider

several lots in single ownership used for a common purpose as being a single tract. These consolidated lots can then be used to determine the percentage of tracts used for urban purposes." *Lowe v. Mebane,* 76 N.C. App. 239, 242, 332 S.E.2d 739, 742 (1985); *see also Adams-Millis Corp. v. Kernersville,* 6 N.C. App. 78, 169 S.E.2d 496 (1969). However, we need not reach the merits of this argument because the associated assignments of error are resolved by our preceding analysis reversing the trial court's classification of lots under development as commercial. As noted, in Finding 18, the trial court found that at "the time of adoption of the Service Plan, the structures on the [lots 7588, 8412, and 8597, were] demolished, the site had been graded, . . . and those properties were being redeveloped for combined use as a strip shopping center." Because lots can only be combined where they are "used for a common purpose," we hold that these lots were improperly combined and erroneously classified as in commercial use where lots 7588, 8412, and 8597 were in the process of development rather than "in commercial use." Therefore, we reverse the trial court's order with respect to the combination and commercial classification of lots 7588, 8412 and 8597.[1]

As noted, the trial court determined that Asheville's 15 March 2000 Service Plan reflected a "determination that 22 of 32 lots in the Ridgefield Area, or 68.75%, were in use for one of the statutorily enumerated qualifying purposes." Our review, however, has indicated that only 18 of 34[2] lots in the Ridgefield Area, or 52.9%, were actually in use for one of the statutorily enumerated qualifying purposes on 15 March 2000. Consequently, because the language of Section 160A-48 is free from ambiguity, and represents a legislative determination

---

1. In an unveiling attempt to persuade this Court to ignore the clear and ordinary import of the annexation statute, Asheville argues:

> In a broad sense, [the Ridgefield Parties] First and Second arguments ask the Court to elevate form over substance, and to be blind to facts that are obvious to everyone else. The evidence in this case clearly indicates that the Ridgefield Area as a whole was rapidly developing . . . many buildings were under simultaneous construction, and other underutilized properties . . . were being bought out and redeveloped into more intensive uses. Nowhere is there evidence that the area was not under rapid development.

Although it might be prudent for the General Assembly to revisit the issue of annexation, this Court is not "blind to the facts," rather this Court is duty bound to the rule of law.

2. We held, *supra,* that three of these lots, 9962, 2253, and 2633, were improperly classified as commercial. Furthermore, we held that three of these lots, 7588, 8412 and 8597, were erroneously combined into one lot and classified as commercial. Accordingly, the total number of lots was improperly calculated by Asheville as 32, rather than 34.

**RIDGEFIELD PROPS., L.L.C. v. CITY OF ASHEVILLE**

[159 N.C. App. 376 (2003)]

which demands strict compliance with the use test, we must hold that Asheville's annexation ordinance is null and void.[3] "It is not for us to determine the wisdom of this determination. The meaning of the law is plain and we must apply it as written." *Food Town Stores, Inc. v. Salisbury*, 300 N.C. 21, 36, 265 S.E.2d 123, 132 (1980).

Reversed and Remanded.

Judge ELMORE concurs.

Judge McCULLOUGH dissents.

McCULLOUGH, Judge, dissenting.

The majority opinion invalidates an annexation ordinance adopted 13 June 2000 and affirmed by the superior court. In finding the annexation ordinance null and void, the majority bases its decision on the conclusion that construction activity does not constitute commercial activity. From this conclusion I must respectfully dissent.

Petitioners contend that certain tracts do not meet the "use test" mandated by N.C. Gen. Stat. § 160A-48(c)(3), which provides:

> (c) Part or all of the area to be annexed must be developed for urban purposes at the time of approval of the report provided for in G.S. 160A-47 [The Service Plan]. . . . An area developed for urban purposes is defined as any area which meets any one of the following standards:
>
> * * * *
>
> (3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes[.]

It is undisputed that, at the time the ordinance was adopted, significant construction activity was underway and the properties were being developed as a strip mall and offices in accordance with the zoning ordinance and certain restrictive covenants. The majority con-

---

3. In their brief, the Ridgefield Parties also assign error to the trial court's legal conclusion that N.C. Gen. Stat. § 148(d) allows a city to count the area of road rights-of-ways in order to meet the statutory requirement that non-urban areas do not exceed twenty-five percent of the total area to be annexed. However, we expressly decline to address this assignment of error as the annexation ordinance is invalidated on narrower grounds.

cludes that the "use test" cannot be met until construction is over and the tenants are in place. I believe this view is too restrictive.

It is true that vacant land zoned for a future purpose, but with no activity underway cannot be considered for annexation based on the zoning alone. *See R. R. v. Hook*, 261 N.C. 517, 520, 135 S.E.2d 562, 565 (1964). I believe construction activity itself is in fact a commercial. use. The common definitions of "commercial" or "commerce" include "[t]he exchange of goods and services," *Black's Law Dictionary* (7th ed. 1999) or "[t]he buying and selling of goods[.]" *American Heritage Dictionary* 280 (3d ed. 1997).

When a developer hires a construction company to erect shopping centers and/or offices, such would certainly seem to qualify as a "commercial" use of the property. The construction company is purchasing building materials and using them to erect the structures by the application of skilled labor in the hopes of making a profit on the transaction. Such activity is "commercial" by its very nature.

I do not believe that the City of Asheville was required to wait until the stores and offices were completed before adopting the annexation ordinance. Accordingly, I would affirm the decision of the superior court upholding the annexation.