WILLIAM A. HAYES, LANNESS K. McKEE AND WIFE, ANN McKEE, JIMMY SMITH AND WIFE, RUBY SMITH, JO ANN SMITH, AMY SMITH, SAM TEDDER AND WIFE, ANN TEDDER, FRAN J. COLEMAN, ROBERT CAPPS AND WIFE, BEVERLY CAPPS, THOMAS LEWIS AND WIFE, SHIRLEY LEWIS, C.M. IVEY AND WIFE, GLADYS IVEY, ALLEN FOWLER, III, ROBERT FLOYD, III AND WIFE, BETH FLOYD, BARBARA SMITH, CHARLES CALLAHAN, A.B. STUBBS AND WIFE, REBECCA STUBBS, FAIRMONT GOLF CLUB, INC., PETITIONERS v. TOWN OF FAIRMONT, RESPONDENT

No. COA03-1562

(Filed 21 December 2004)

**1. Cities and Towns— annexation—subdivision test—reliance on survey**

The trial court did not err by concluding that certain property consisted of separate lots for purposes of the subdivision test for annexation. Petitioners did not show that the town was unreasonable in relying upon an actual survey, as allowed by statute.

**2. Cities and Towns— annexation—undeveloped property— insignificant portion of golf course**

A golf course was properly designated as commercial by a town for annexation purposes and the entire acreage, including an undeveloped portion, should have been included as commercial acreage under the use test. The disputed portion was only about 15% of the total area of the tract.

**3. Cities and Towns— annexation—subdivision test**

An annexation ordinance met the subdivision test even after a golf course with vacant land was reclassified as commercial.

Appeal by petitioners from order entered 23 June 2003 by Judge Gary L. Locklear in Robeson County Superior Court. Heard in the Court of Appeals 1 September 2004.

*C. Wes Hodges, II, P.L.L.C., by C. Wes Hodges, II, for petitioner-appellants.*

*Charles E. Floyd for respondent-appellee.*

THORNBURG, Judge.

This is an appeal brought pursuant to N.C. Gen. Stat. § 160A-38 (2003) for judicial review of an ordinance of the Town of Fairmont ("Town") to annex into its corporate limits the Golf Course Road area.

The facts pertinent to this appeal are as follows: The Town Council of Fairmont, a municipal corporation with a population of less than 5,000, identified an area known as the Golf Course Road area for annexation by adopting a resolution of intent to annex on 13 July 2000. A public hearing on the matter was conducted on 15 August 2000.

The Town adopted an ordinance annexing the Golf Course Road area on 10 October 2000. The annexation ordinance incorporated a specific finding that the annexation area met the use and subdivision tests of N.C. Gen. Stat. § 160A-36 (2003). The annexation ordinance established an effective date of 31 October 2001. On 8 December 2000, petitioners filed their petition challenging the action of the Town in adopting its annexation ordinance.

Petitioners specifically challenged the classifications assigned by the Town to three plots within the annexation area: the Fowler lots, the Brice lots and the Fairmont Golf Club parcel. The trial court first concluded that the statutory procedures and requirements of N.C. Gen. Stat. § 160A-35 had been met. The trial court further concluded: (1) that the Fowler lots were inappropriately classified as three residential lots, and instead were only one common residential lot; (2) that the Brice lots were appropriately classified as two lots, one residential and one vacant; and (3) that 26.44 acres of the Fairmont Golf Club parcel were incorrectly classified as commercial and, instead, 19.44 acres should have been classified as vacant and 7 acres as governmental or institutional. Despite the errors in classification, the trial court concluded that the area proposed for annexation met the statutory requirements of N.C. Gen. Stat. § 160A-36 and affirmed without change the Town's annexation ordinance. Petitioners appeal from this judgment.

Petitioners argue on appeal: (1) that the trial court erred in concluding that the Brice lots were two separate lots three acres or less in size; (2) that the trial court erred in concluding that seven acres of the Fairmont Golf Club parcel should have been classified as governmental or institutional; and (3) that due to these errors, the trial court erred in concluding that the Golf Course Road area met the requirements of N.C. Gen. Stat. § 160A-36.

The superior court's review of an annexation ordinance is limited to deciding (1) whether the annexing municipality complied with the statutory procedures; (2) if not, whether the petitioners will suffer

material injury as a result of any alleged procedural irregularities; and (3) whether the area to be annexed meets the applicable statutory requirements. *In re Annexation Ordinance*, 278 N.C. 641, 647, 180 S.E.2d 851, 855 (1971); *Trask v. City of Wilmington*, 64 N.C. App. 17, 28, 306 S.E.2d 832, 838 (1983), *disc. review denied*, 310 N.C. 630, 315 S.E.2d 697 (1984); N.C. Gen. Stat. § 160A-38 (2003). Where the annexation proceedings show *prima facie* that the municipality has substantially complied with the requirements and provisions of the annexation statutes, the burden shifts to the petitioners to show by competent evidence a failure on the part of the municipality to comply with the statutory requirements or an irregularity in the proceedings that materially prejudices the substantive rights of the petitioners. *In re Annexation Ordinance*, 278 N.C. at 647, 180 S.E.2d at 855-56.

I.

**[1]** Petitioners contend that the trial court erred by finding and concluding that the Brice lots were in fact two separate lots, thus causing inaccurate results in the subdivision test for purposes of meeting the requirements of N.C. Gen. Stat. § 160A-36. We disagree.

N.C. Gen. Stat. § 160A-36(c) states in pertinent part:

The area to be annexed must be developed for urban purposes at the time of approval of the report provided for in G.S. 160A-35 . . . . An area developed for urban purposes is defined as:

(1) Any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size.

N.C. Gen. Stat. § 160A-36(c)(1) (2003).

The Town found the Brice property to be comprised of two lots, described as 1.90 acres more or less and 2.68 acres more or less, by relying on a plat recorded in Book of Maps 36, page 148, Robeson County Registry on 15 February 1999. The trial court made the following findings regarding the Brice property:

13. Petitioners contend Respondent erred in its classification of the lands owned by L.B. Brice and wife, Mildred Brice as two separate lots three acres or less in size. Petitioners contend these lands should have been classified as one lot of 4.59 acres.

14. Said Brice lands are more particularly described according to a map entitled "Boundary Survey and Proposed Division for Bridget B. Bass" by Phillip B. Culbreth, R.L.S. dated 19 December 1998 and filed in Map Book 36, page 148, Robeson County Register of Deeds. Said map is Petitioners Exhibit 20.

15. Said recorded map shows three lots; Lot 1 being 1.90 acres, more or less; Lot 2 being 2.68 acres, more or less; and Lot 3 being 0.73 acre, more or less.

16. Said recorded map contains certifications by the Robeson County Health Officer, the owners, L.B. and Mildred Brice, the Mayor of the Town of Fairmont, the Chairman of the Fairmont Planning Board, the surveyor and the Robeson County Review Officer that said map creates a subdivision and meets the Town and County subdivision requirements.

17. Lot 3 on said recorded map was conveyed to Bridgett Brice Bass by deed dated February 25, 1999 and recorded in Deed Book 1046, page 802.

18. Lots 1 and 2 on said recorded map are treated as one parcel of 4.59 acres owned by L.B. and Mildred Bass by the Robeson County Tax Office and have one tax parcel identification number.

19. Said recorded map is a subdivision of the Brice tract into two tracts as shown on said recorded map as Lot 1, 1.90 acres, more or less, and Lot 2, 2.68 acres, more or less, each 3 acres or less in size and were properly so classified by Respondent at the time of annexation.

We note that finding number 19 is more properly a conclusion of law and thus will be treated as such. See In re Weiler, 158 N.C. App. 473, 478-79, 581 S.E.2d 134, 137 (2003). Findings of fact made below are binding on the appellate court if supported by the evidence, even where there may be evidence to the contrary. Humphries v. City of Jacksonville, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

Where an appeal is taken from adoption of an ordinance and the proceedings show prima facie that there has been substantial compliance with the statute, the burden is on the petitioners challenging

the ordinance to show competent evidence that the city in fact failed to meet the statutory requirements. *In re Annexation Ordinance*, 278 N.C. at 647, 180 S.E.2d at 855-56. N.C. Gen. Stat. § 160A-42 (2003) provides that municipalities must "use methods calculated to provide reasonably accurate results" in determining the degree of land subdivision for purposes of meeting the requirements of N.C. Gen. Stat. § 160A-36. In reviewing whether the standards of N.C. Gen. Stat. § 160A-36 have been met, the court must accept the estimate made by the municipality as to the degree of land subdivision:

> [I]f the estimates are based on an actual survey, or on county tax maps or records, or on aerial photographs, or on some other reasonably reliable source, unless the petitioners on appeal show that such estimates are in error in the amount of five percent (5%) or more.

N.C. Gen. Stat. § 160A-42(2) (2003).

In addition, the North Carolina Supreme Court in *Thrash v. City of Asheville*, 327 N.C. 251, 393 S.E.2d 842 (1990), held that the accuracy of a subdivision test must reflect actual urbanization of the proposed area, not just reliance on some artificial means of making an annexation appear urbanized. *Id.* at 257, 393 S.E.2d at 846.

In the instant case, the Town relied upon an actual survey prepared by the Brices when they subdivided their lot into three lots and conveyed one of the newly created lots to Bridget Brice Bass. The burden was on the petitioners to show that the use of this survey caused the Town to miscalculate the actual percentage of subdivision. Petitioners argue that the remaining two lots of the Brice property should be treated as one lot for classification purposes. Multiple lots are properly treated as a single tract for the purposes of classification where the several lots are under common ownership and are used for a common purpose. *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 265 S.E.2d 123 (1980); *Arquilla v. City of Salisbury*, 136 N.C. App. 24, 523 S.E.2d 155 (1999), *disc. review denied*, 351 N.C. 350, 543 S.E.2d 122 (2000). Petitioners argue that the common ownership and residential use of the two lots requires that they be treated as one lot for classification purposes; thus, petitioners argue that they met their burden of showing that the Town was unreasonable in relying upon the survey to classify the Brice lots.

In *Asheville Industries, Inc. v. City of Asheville*, 112 N.C. App. 713, 436 S.E.2d 873 (1993), this Court found that the city was unrea-

sonable in relying upon a map that showed the subdivision of the tract in question given that the petitioners had shown common ownership and a single use. *Id.* at 720, 436 S.E.2d at 877. In *Asheville Industries*, the landowner testified as to his actual usage of the property in question. *Id.* Here, the only evidence offered by the petitioners to support common ownership and usage is the county tax records, which listed one tax identification number for the Brice property. The Brices did not testify as to the lots' actual use and in fact are not parties to this action. We conclude that petitioners did not show that the Town was unreasonable in relying upon an actual survey, as allowed by statute. Thus, the trial court did not err in concluding that the Brice property consisted of two separate lots for the purposes of the subdivision test. Petitioners' assignment of error fails.

II.

[2] Petitioners next contend that the trial court erred by finding and concluding that 7 acres of the contested 26.44 acre area of the golf course parcel was used for governmental or institutional purposes, thus causing inaccurate results in the subdivision test for purposes of meeting the requirements of N.C. Gen. Stat. § 160A-36. In regards to the golf course tract, the trial court found:

31. Petitioners contend Respondent erred in its classification of the lands of Fairmont Golf Club, Inc. as one commercial lot. Petitioners contend that part of the Fairmont Golf Club tract is vacant and undeveloped and should be classified as such.

32. The Fairmont Golf Club lands consist of approximately 166 acres all in one contiguous tract of land which is treated as a single tract by the Robeson County Tax Office with one tax parcel identification number.

33. The Fairmont Golf Club, Inc. lands are subject to an "Option To Purchase Contract and Agreement For Right Of First Refusal" dated January 27, 1997 and recorded in Book 940, page 688, Robeson County Registry and are subject to a "First Amendment To Lease With Option To Purchase And Agreement For Right Of First Refusal" dated December 14, 1999 and recorded in Book 1090, page 230, Robeson County Registry.

34. William A. Hayes, one of the Petitioners, testified that he is President of Fairmont Golf Club, Inc. and that part of the Fairmont Golf Club, Inc. tract along the northern edge and as

shaded in yellow on Petitioners' Exhibit #17 was not developed nor used for any commercial purpose at the time of annexation.

35. Sherwin Cribb, a professional land surveyor, testified on behalf of Petitioners that said portion as shaded in yellow consists of 26.44 acres.

36. Petitioners contend that this 26.44 acre portion should have been classified as vacant and undeveloped by Respondent and that the remainder of the Fairmont Golf Club, Inc. tract was proper to be classified as commercial.

37. Johnny W. Nobles, a professional land surveyor, testified on behalf of Respondent that he agreed with Surveyor Cribb's estimate of 26.44 acres as shaded in yellow on Petitioners' Exhibit #17 and further testified that 7 acres of the 26.44 acres were part of a perpetual drainage easement to the Town of Fairmont which is 200 feet in width and said drainage easement is recorded in Deed Book 16-0, page 1, Robeson County Register of Deeds. Said easement deed is one of Respondent's Exhibit [sic][.]

38. At the time of annexation Respondent should have classified this 7 acres of the 26.44 acres shaded in yellow in Petitioners Exhibit 17 as governmental or institutional use.

39. The Fairmont Golf Club, Inc. tract is one contiguous tract, not divided by any road or highway, which contains along its northern border a strip of land area on which no building, fairway, tee, green or other golf course use is found other than as drainage.

40. At the time of annexation 19.44 acres of the 26.44 acres shaded in yellow in Petitioners Exhibit 17 of the Fairmont Golf Club, Inc. property should have been classified as vacant and undeveloped by Respondent.

We again note that findings numbers 38 and 40 are more properly conclusions of law and thus will be treated as such. *See In re Weiler*, 158 N.C. App. at 478-79, 581 S.E.2d at 137. Findings of fact made below are binding on the appellate court if supported by the evidence, even where there may be evidence to the contrary. *Humphries*, 300 N.C. at 187, 265 S.E.2d at 190.

In our review of the record, there is competent evidence to support the trial court's findings about the golf course tract. However, we determine that the trial court erred in concluding that 7 acres of the

tract should have been classified as governmental or institutional use and 19.44 acres should have been classified as vacant.

N.C. Gen. Stat. § 160A-36(c)(1)'s definition of an area developed for urban purposes includes two tests, the use test and the sub-division test, that must be met in order for the proposed annexation area to be considered developed for urban purposes. In order to meet the use test portion of the urban purposes definition, the area proposed for annexation must be so developed "that at least sixty percent (60%) of the total number of *lots and tracts* in the area at the time of annexation are *used* for residential, commercial, indus-trial, institutional or governmental purposes . . . ." N.C. Gen. Stat. § 160A-36(c)(1) (emphasis added). "When compliance with the statu-tory requirements is in doubt, the determination of whether an area is used for a purpose qualifying it for annexation will depend upon the particular facts of each case." *Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 19, 293 S.E.2d 240, 244, *disc. review denied*, 306 N.C. 559, 294 S.E.2d 371 (1982).

The statute requires the municipality to classify the usage of *lots and tracts* for the purposes of the use test, not the usage of each indi-vidual acre in the proposed annexation area. In *R.R. v. Hook*, 261 N.C. 517, 135 S.E.2d 562 (1964), the Court found that it was error for the trial court to uphold the classification of a lot as being in industrial use where only approximately 10% of the tract was being used as a parking lot by the industrial owner of the tract. *Id.* at 520, 135 S.E.2d at 565 ("This user does not determine the character of the other 90% of the tract, which is undeveloped and serving no active industrial purpose"). In *Scovill*, this Court upheld the trial court's conclusion that an entire tract was properly classified as industrial where "[t]here has been no showing that the extent of industrial use was insignificant as compared to any nonindustrial use." *Scovill*, 58 N.C. App. at 20, 293 S.E.2d at 244. *See also Asheville Industries*, 112 N.C. App. at 721, 436 S.E.2d at 878 (finding that the industrial usage of a .79 acre easement was insignificant compared to the nonindustrial use of the entire 36.22 acre tract and that the property was incorrectly classified as industrial in use).

This Court has found that a golf course is a commercial purpose for classification purposes under former Chapter 160 [now Chapter 160A]. *Thompson v. City of Salisbury*, 24 N.C. App. 616, 619, 211 S.E.2d 856, 858, *cert. denied*, 287 N.C. 264, 214 S.E.2d 437 (1975). In the instant case, it is undisputed that approximately 140 acres of the approximately 166 acre golf course tract is in use as a golf course.

The disputed 26.44 acres is only approximately 15% of the total area of the tract. Thus, under *Hook, Scovill* and *Asheville Industries*, it was error for the trial court to conclude that the usage of the disputed 26.44 acres affected the classification of the golf course tract as a whole. We conclude that the golf course tract was properly designated as commercial by the Town in its original calculations and the entire 166 acres should have been included as commercial acreage for purposes of calculations under the use test.

III.

**[3]** Petitioners have contended that any change in the use classification of the Brice lots or the golf course tract necessarily causes the ordinance to fail the subdivision test of N.C. Gen. Stat. § 160A-36(c)(1), thus making the Golf Course Road area ineligible for annexation. We now consider whether the subdivision test has been met. The trial court found that the total vacant and residential acreage in the Golf Course Road area was 95.35 acres by allowing that 19.44 acres of the golf course tract was vacant. Of the total 95.35 vacant and residential acres, the trial court found that 59.40 acres was comprised of lots and tracts three acres or less in size. Based thereon, the trial court determined the percentage of subdivision to be 62.29%. The trial court then concluded that both tests in N.C. Gen. Stat. § 160A-36(c)(1) had been met and that the Town had substantially complied with the requirements of the statute.

However, when the golf course tract is treated as a whole tract in use for commercial purposes as we instruct, 19.44 acres should be removed from the vacant and residential acreage total. Thus, 75.91 acres is the total amount of vacant and residential acreage. Of that 75.91 acres, 59.40 acres are comprised of lots and tracts three acres or less in size. Based on the new calculations, we determine the percentage of subdivision to be 78.25%. Thus, the Golf Course Road area meets the 60% minimum required under the subdivision test of N.C. Gen. Stat. § 160A-36(c)(1).

Given that the Town has substantially complied with the provisions of N.C. Gen. Stat. § 160A-36, we affirm the trial court's conclusion that the ordinance be affirmed without amendment pursuant to N.C. Gen. Stat. § 160A-38.

Affirmed.

Judges GEER and LEVINSON concur.